## CIRCUIT COURT OF THE CITY OF RICHMOND

James K. Cluverius,
Ancillary Administrator c.t.a.
of the Estate of
Kenneth O. Fisketjon,
deceased

v.

James McGraw, Inc.,
George W. Sydnor, Jr.,
and Valley Forge Life Ins. Co.

November 6, 1997

Case No. HI-618-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is before the court on demurrers filed by each of the three named defendants. Plaintiff's claim is based on written documents consisting of a stock buy out and escrow agreements concerning two life insurance policies, all of which are before the court as included in the pleadings.

The question for the court on demurrer is whether the pleading states a claim upon which relief can be granted. *Lentz v. Morris,* 236 Va. 78 (1988). In ruling on a demurer that touches and concerns attached documents, the court is free to examine the documents made a part of the pleading to test the legal sufficiency of what has been pleaded. Any doubt in the construction of what has been asserted as plaintiff's claim must be resolved in favor of the construction given by the plaintiff in the pleadings. *Fun v. Virginia Military Inst.,* 245 Va. 249, 253 (1993). Under these principles, the court will examine the facts as alleged, taking them as true considering the contentions of the parties.

The plaintiff, James Cluverius, ancillary administrator of the estate of Kenneth O. Fisketjon, deceased, has brought this action by Bill of Complaint in equity seeking specific performance and a constructive trust concerning two life insurance policies on Fisketjon's life. The policies were issued by defendant Valley Forge Life Insurance Company and have a face value of $1,000,000 each. The policies were issued in December 1995 pursuant to a stock buy out agreement between Fisketjon and defendant James McGraw, Inc.

In May 1996, McGraw and Fisketjon entered into a written Stock Redemption Agreement (the Agreement) in which McGraw purchased all of Fisketjon's stock in McGraw and Fisketjon agreed to resign as an officer and employee of McGraw. Fisketjon received $100,000 in cash and a promissory note for $671,330. McGraw agreed to maintain the two insurance policies. McGraw is the owner and beneficiary of one policy (the corporation policy). George W. Sydnor, Jr., the president of McGraw, is the owner and beneficiary (the Sydnor policy) of the other.

Under the Agreement, the policies were to retire any remaining principal and interest due on McGraw's obligation under the note and any balance is to be paid to the Fisketjon estate as a "death benefit." The Agreement also provided that if Fisketjon wanted to have either the corporation policy or the Sydnor policy transferred to him, McGraw would facilitate this "at Fisketjon's sole cost and expense with respect to the premiums and any other cost or expense attributable to any such transfer, upon written notice which must be given by Fisketjon to the Corporation prior to closing date hereunder." The closing date was September 30, 1996.

Prior to the closing date, Fisketjon, through counsel, orally informed McGraw of his intention to exercise his policy assignment rights under the Agreement with regard to the Sydnor policy. After the closing date, on October 4, 1996, Fisketjon executed change of beneficiary forms and McGraw sent these on to the insurance company. In a letter dated November 6, 1996, counsel for McGraw asked Fisketjon's attorney how Fisketjon planned to reimburse the premium costs already paid by McGraw on the Sydnor policy. On November 20, 1996, Fisketjon died suddenly and unexpectedly.

The defendants later represented that they would follow the Agreement regarding the Corporation policy but not the Sydnor one because Fisketjon failed to take the steps necessary to acquire ownership in the latter policy as required by the Agreement. The Fisketjon Estate tendered payments of prorated premiums on the Sydnor policy in February 1997 pursuant to an October 11, 1996, invoice of those premium amounts, but the defendants

refused to accept the payment on the basis that such right was Fisketjon's alone, not his estate's.

After Fisketjon's death, plaintiff sought to obtain the proceeds of the corporation policy. Thereafter, plaintiff McGraw and Sydnor entered into an Escrow Agreement whereby the corporation policy proceeds were to be held and thereafter delivered to the Fisketjon estate. However, Sydnor and McGraw later advised plaintiff that the insurance company had refused to release the proceeds because Fleet Capital Corporation had asserted a lien on the proceeds to the extent of $500,000. The insurance company has refused to pay the proceeds until the Fleet lien issue is resolved.

In its demurrer, McGraw asserts that the plaintiff-administrator does not have standing to assert a claim under the Agreement. McGraw relies on a provision in the Agreement that says that the parties do not intend to confer rights to others as third party beneficiaries. However, the Agreement also provides that to the extent permitted its provisions inure to the benefit of the parties' "heirs, legal representatives, successors, and assigns." This provision controls over any prohibitory language about third party-beneficiaries. Plaintiff, as administrator, is in the same position as Fisketjon to enforce the terms of the Agreement and is not in true sense a third party beneficiary. *See, e.g., Burns v. Equitable Assocs.*, 220 Va. 1020 (1980) (the personal representative of an estate, not its beneficiary, is the proper party to litigate on behalf of the estate); *Waller v. Eanes' Adm'r*, 156 Va. 389 (1931) (in suit to enforce deed of trust by administrator, administrator stands in intestate's shoes); *Mann v. Land*, 177 Va. 509 (1941) (a personal representative stands in the shoes of the decedent and may seek an appeal or writ of error of a judgment entered against the decedent). Plaintiff has standing.

McGraw and Sydnor argue that Count I of the Bill of Complaint is legally deficient because there is no allegation that Fisketjon ever paid the premiums on the transfer of the Sydnor policy. The terms of the Agreement do not seem to require this, however. Whether the payment of premiums had to come before the transfer could be made effective is a factual matter not readily determinable by the Agreement. This aspect is a factual concern, and the mere failure by plaintiff to assert that premiums were paid prior to the closing date would require a construction of the Agreement and its amendment as a whole. Payment of premiums, whether required, is a matter of proof for later determination. This does not make plaintiff's claim deficient in law on demurrer.

The same rationale applies to Sydnor's and McGraw's contention that plaintiff's claim is not legally cognizable because it fails to allege that Fisketjon did not provide written notice of his intent to transfer. Paragraphs 19

and 20 of the Bill of Complaint allege that Fisketjon "informed the corporation of the exercise of his rights under § 5.3(e)(iii)(2) of the Agreement to have sole ownership of the Sydnor Policy transferred to him." This allegation is sufficient to survive the demurrers in this regard.

As to Count II of the Bill of Complaint, McGraw and Sydnor assert that there is no allegation that a breach of the Agreement occurred. The allegations here are essentially that both Sydnor and McGraw failed to notify the insurance company and that McGraw failed to take all the necessary steps to insure that proceeds of the corporation policy be applied to pay the note, with the balance of such proceeds paid to the estate. In view of these allegations and the terms of the Agreement, the assertions in this Count are sufficient to mount a claim because, if proven, they state a breach of the agreement.

All defendants contend that plaintiff's claim is not legally cognizable because plaintiff has not named Fleet as a defendant. The court agrees with plaintiff; the facts and matters alleged under the agreement are sufficient to state a cause of action exclusive of naming Fleet as a party as the agreement alleged is one between the named parties, creating rights and responsibilities among them. This is also true as to Sydnor individually, since it is alleged that Sydnor did not take the proper steps to insure the transfer of the Sydnor policy and payment of the corporation policy proceeds under the terms of the Agreement. The same can be said regarding the insurance company. That is, it is sufficient that plaintiff has alleged a failure to pay the corporation policy proceeds in his capacity as an interested beneficiary of an insurance policy.

Finally, there is the matter of equitable jurisdiction raised by both McGraw and Sydnor. As noted, plaintiff has asserted claims for specific performance and the imposition of a constructive trust. The court will take this question under advisement and, if need be, at a later stage in the proceedings, consider whether the case should transfer to the law side of the court as a breach of contract case for money damages.

Counsel for plaintiff is directed to draw an Order overruling the demurrers for the reasons stated and make provision for each of the defendants to note their exceptions.